THELMA GAY LOWREY *v.* OLLIE 'FRED LOWREY
AND LEOTA LOWREY

5-5654                                              473 S.W. 2d 431

Opinion delivered December 13, 1971

*Mobley & Bullock,* for appellant.

*R. H. Hixson,* for appellees.

FRANK HOLT, Justice. This appeal results from the chancellor's imposition of an equitable lien on certain real and personal property. Appellant brought an action against appellee Ollie Fred Lowrey for divorce, child custody, maintenance, and a settlement of their property rights. Subsequently, appellee Leota Lowrey and her husband (who died before trial of the issues), Ollie's parents, filed an intervention seeking to impress an equitable lien against certain property owned by their son and daughter-in-law. The lien was asserted against a filling station-grocery store-home combination. It was contended that the lien resulted from advancements or loans made to the Lowreys' son and daughter-in-law. Appel-

lant was granted a divorce, custody of their children, and child maintenance. When the parties could not agree upon their claimed property rights, the chancellor ordered the property in dispute sold at public sale. Appellee Ollie Fred successfully bid (for his mother) the sum of $19,000 for the 3 acres of land and building and $225 for the store inventory and fixtures at the commissioner's sale. The court then awarded appellee Leota Lowrey, the intervenor, an in rem equitable lien to the extent of $10,200.00 against the proceeds of the real estate and an in rem equitable lien in the sum of $5,230.12 on any inventory proceeds. Appellant appeals from that part of the decree awarding these equitable liens. Appellee Leota Lowrey cross-appeals from that part of the court's ruling that the intervenor was not entitled to an in personam judgment for the deficiency of the judgment on the inventory. On appeal the appellant first contends for reversal that the intervenor, Leota Lowrey, has no valid claim to an equitable lien. We think appellant's contention is correct.

The mere loan of money for the purchase of property does not result in an equitable lien in favor of the lender. *Hardin* v. *Hooks*, 72 Ark. 433, 81 S. W. 386 (1904). Where the evidence does not show an agreement to give the lender a lien, or that the loan was acquired through trickery or fraud, then it is error to impress an equitable lien upon property as security for the loan. *Hunter* v. *Johnston*, 226 Ark. 792, 294 S. W. 2d 49 (1956). In the case at bar, the intervenor bases her claim for a lien upon an oral agreement.

The intervenor, Leota Lowrey, and her husband had owned and operated a grocery store for many years. Their son, appellee Ollie Fred, worked for his parents in the store before his marriage to appellant in 1960 and continued working for them until sometime in 1961 or 1962 when the entire store operation was turned over to appellant and Ollie Fred. This young couple continued the business at this old location until 1967 when the construction of the Dardanella Dam-Reservoir necessitated relocation. It was known in 1961 that eventually relocation would be necessary. In 1966 three acres of land were

purchased in the vicinity at a cost of $1,500 and title to this property was conveyed to appellant and her husband as tenants by the entirety. A new building, consisting of a grocery store and home combination, was then built on the property at a cost of $12,379.23. The property was occupied by appellant and her husband in 1967.

The intervenor and her son, Ollie Fred, testified that the following items represented loans or "advancements" to Ollie Fred and appellant and by a "family agreement" constituted a lien against the couple's jointly owned property: $5,230.12 in 1962 as the value of the inventory when the son and daughter-in-law took possession of the property; checks payable only to the son as follows:

| March 1963 | $ 150.00 |
| July 1964 | 500.00 |
| March 1965 | 400.00 |
| July 1965 | 1,200.00 |
| Nov. 1965 | 1,000.00 |
| June 1966 | 1,400.00 |
| Aug. 1967 | 3,000.00 |
| Jan. 1968 | 300.00 |

Also claimed as a loan is a $4,000.00 cash item received by Ollie Fred from his father in March 1966.

Intervenor Leota Lowrey testified that the checks written to her son, as well as the cash item advanced to him, were for the purpose of establishing a "building fund" for the eventual relocation of the new store and for restocking it; that there had been a Lowrey Store at New Blaine, Arkansas for 100 years; and that she and her husband wanted to help their son keep a store at that location and he could repay the loans whenever, as the court found, the young couple "got on their feet." She testified that appellant "knew all about it." And when asked if appellant agreed to it, Leota Lowrey testified: "Well, she didn't say yea nor nay—she knew what was going on. * * * She's asked me on several different occasions if I had an interest in the store and I'd tell her I certainly did but she never did ask how much and I didn't volunteer to tell her."

Her son, appellee Ollie Fred, testified that the advancements were loans with the understanding they would constitute a lien upon the property and that appellant was fully aware of the nature of these transactions and agreed to them. He and his mother testified that beginning in January 1968 (the couple separated in June 1968) he had consistently on the first day of each month for 14 months paid $100 in cash to his mother, such payments representing the $1,400 check advanced by his parents on the balance of the purchase price ($1,500) of the 3 acres. Each of these receipts were written by him and signed by his mother and each one had the words "Payment on lien on store bldg., stock and land" noted thereon. His mother testified that she had this money in "safekeeping" and had not deposited it. After these 14 cash receipts, there followed "either 6 or 7 checks of $80" (he said 12 checks) which she said her son had given to her in additional payment of the "building fund."

With respect to the $1,200 check, the evidence shows that on the same day it was issued it was endorsed by Ollie Fred and given in payment of a boat. His explanation was that the boat later sold for $1,100 and these proceeds went into the "building fund" which was also the personal joint bank account of himself and his wife. As to the $4,000 transaction, the son testified that this was a cash loan from his father to him and that his wife knew all about it and understood that it was a loan and subject to the asserted lien, as were all the other advancements. He testified, however, that after the $4,000 was deposited in their joint account, "I lived on it for 3 or 4 years." His mother apparently was unaware of the $4,000 cash loan until her deposition was taken. Her intervention complaint was then amended to include this item. The $1,000 check was written to Ollie Fred when he was hospitalized. He says $800 of this check went into their joint account for the "building fund." He testified that the $3,000 and the $300 checks, the last two enumerated, were advanced as loans at the time or a few months after the new store was completed and ooccupied: "I was just trying to pay all my bills off and clear it." The checks were deposited to their joint

personal account. However, he testified, and exhibited receipts, that he had paid most of the bills for labor and materials by cash. Most of the checks previously enumerated bore the notation "Savings for new store building." Ollie Fred admitted that he wrote these notations on the checks at some time after he had received them. As previously indicated, all of the checks were made payable to him personally.

Appellant denied that she at any time understood or agreed that any of these checks or the cash transaction was intended as a loan or "advancement" which would constitute a lien upon their jointly owned land and buildings. She only had knowledge of the existence of the checks for $1,400, $1,000 and $300. She was never aware of any repayments on the alleged loans being made by her husband to her mother-in-law. Although appellant worked in the store, they did not discuss business affairs with her nor was she permitted by her husband to transact any business. In fact, her mother-in-law agreed that appellant was not included "very much" in the business discussions. Appellant testified that her husband's parents had given him money all of his life for whatever he wanted. There was also competent evidence that Ollie Fred's parents had advanced money to his sister as gifts. Appellee Leota Lowrey testified that she and her son had discussed how to best preserve her interest in the store when he began repaying her at $100 per month in January 1968 and, further, that she did not know what a lien was prior to the time the lawsuit was filed.

Even though it can be said that sums of money were advanced or loaned to appellee Ollie Fred Lowrey by his parents, we think the evidence falls far short of establishing by a preponderance of the evidence an oral agreement that these protracted loans would be secured by an equitable lien, or that appellant is personally liable for any of these transactions. Furthermore, appellant's testimony is unrefuted that her marriage from the beginning was characterized by strife and discord, accompanied by threats of physical violence which resulted in three separations. It can hardly be said that such a marital climate was conducive to this asserted "family agreement."

The appellant and Ollie Fred, who has now abandoned his appeal, agreed during the divorce action to divide various items of personalty. On appeal it is asserted that the court erred in failing to award appellant her statutory interest in certain other items of personal property. We agree with her only to the extent that she should have her statutory interest in the automobile which her husband owned at the time of their divorce.

Appellant's counsel is awarded an attorney's fee of $1,500 for services rendered on appeal to this court.

The decree imposing an equitable lien is reversed and remanded with directions to cancel the lien and for proceedings not inconsistent with this opinion.

Reversed and remanded on direct appeal; affirmed on cross-appeal.